1038, Halvonik, against the Patent and Trademark Office. 1.    Mr. Halvonik, when you're ready. May it please the Court, John Halvonik, Pro Se. This is an appeal of a disciplinary matter resulting in the suspension of my license to practice patent law. Today I'm going to cover four overriding issues that pertain to the entire case, and then I'll get to the specifics of Nelson and Palmer. 1. Subject matter jurisdiction. ALJ lacked subject matter jurisdiction to hear this case because he made no finding that the Committee on Discipline had met. 2. I asked for witnesses to be called from the Committee in my own defense, and ALJ denied me the right to call those witnesses, which is a denial of due process. 3. The complaint was fatally defective on its face. It did not allege willfulness or the equivalent anywhere in it. 4. There is no evidence that the Director or the Committee on Discipline passed on the issue of willfulness as they must. 1. The Committee on Discipline is an important safeguard to ensure fairness in the disciplinary system. A Committee meeting is a necessary precondition before a complaint can be brought. In the Patent Office's own words, the Committee on Discipline functions in a manner similar to that of a mini-grand jury. The first step is to prepare a charging document in the form of a formal complaint. The evidence to support each count is attached to the complaint. The Committee deliberates in a closed session and by majority vote determines whether there is probable cause. That's not me talking, that's the Patent Office and the Director's supplemental response to Respondent's request for production of documents at Bates No. 1000-1160 and that's specifically found at Bates No. 1135 and 1128. The ALJ here did find that the Committee met. He found in the alternative. He found that the evidence suggested one of three possibilities, either that they met face-to-face, telephonically, or by transmittal coordination. Or three different ways to meet. He came up on his own with three different ways for the Committee to meet. However, the evidence supports only one of those possibilities and that is the possibility, the ALJ suggested, of transmittal coordination. Nowhere in the regulations does the term transmittal coordination appear. The judge himself defined that term by saying it's like in the military where everybody takes a chop on a document and it's in a transcript at page 236. Now the Commissioner agreed with his decision that circulating a document and signing off on it is appropriate. That's not deliberating in closed session. That's not meeting and voting. The judge himself became very concerned because the affidavit submitted by the Director said that she had called a meeting without saying that a meeting had occurred and there was no date on the probable cause certificate, no other identifying indicia to suggest that this complaint had anything to do with me other than my name. The judge was concerned so he directed her to produce an unredacted version of the probable cause certificate and at that time we asked for the judge to see the unredacted version so he could make a determination. The judge, in his order of October 6th, asked the Director to produce that as well as any supporting analysis used by the committee in this determination. The date she submitted the case, the date they met, as well as the probable cause certificate and any supporting analysis. That's on the initial decision at page 15. What she submitted was an unredacted version with nothing else and the judge became very concerned so he ordered the Director, requested the Director to produce one witness from the committee met. The Patent Office would not do that so he offered them a second option. He said you can bring in affidavits of the committee having four things. The date they met, how they met, the date they reached the conclusion of probable cause and the date they signed the probable cause determination. What they produced was three pieces of paper, affidavits signed by the committee members saying that they signed the document in serial order and that does not constitute evidence of a meeting, not in regulations. That's not meeting and that's not deliberating so the case should be dismissed on that ground. Number two, I asked for witnesses in my own defense. These committee members were all Patent Office employees and the judge granted me the right to call one witness from the committee of my choice and that's in the transcript, page 433. And then he denied me the right to pursue inquiry any further on the spurious reason that discovery had closed and for judicial economy reasons. I wasn't trying to take discovery, I was trying to put on witnesses in my own defense to present my own case in chief that they had not done their duty to meet and deliberate and vote. The Commissioner said in his final decision, page 11, that there was no evidence that the committee hadn't met. Well, how was I to prove that the committee hadn't met unless I was able to call witnesses from the committee to prove how they met? The denial of the right to call those witnesses is a denial of due process under Green v. McElroy and Wilner v. Committee on Fitness, cases cited in my briefs. Number three, the complaint was fatally defective on its face because it does not allege willfulness or equivalent words anywhere in it. Under Section 558C, notice and opportunity to correct must be given to an attorney unless the violation is willful. The Patent Office has adopted a mini version of that rule, 10.132A, where it's the director's duty to determine whether Section 558C has been complied with, and if so, to determine whether a complaint should be brought. And she has a duty also under Rule 10.2B to determine willfulness or if Section 558 has been complied with. Nowhere in the complaint does the complaint allege willfulness or equivalent words anywhere in it. This complaint was carefully drafted to specify facts and regulations that were supposed to be violated, but nowhere is the term willfulness or equivalent words in there. Willfulness is a conclusion of law, requires specific underlying fact findings to be made before a conclusion like that can be made. Willfulness must be pleaded as well as the specific fact findings necessary to support the conclusion so that I can prepare a defense. I have to be on notice of what facts are going to be important in issue that might result in a guilty verdict. Well, you were placed on notice that you knowingly violated the PTO rules, were you not? Yes. The word they used in the complaint, in one place in the complaint, the word knowingly appears. But knowingly is not the same as willfulness. Willfulness means you knew of a duty and you acted in a manner that was violating that manner as to amount to an intentional misdeed. Knowingly is not the same as willfulness. Knowingly just means you are aware of your actions. We quoted Supreme Court cases on willfulness, in particular Ratzlaff case and the Cheek case, which involved statutes where the term willfulness was used in the statute. And that term willfulness, the Department of Justice took the approach that the term willfulness added nothing to the charge. What about the case of Bryan versus the United States? Bryan, right. The notion that disregard of a known legal obligation is sufficient to establish a willful violation. Bryan, the court distinguished Bryan from the other two cases because Bryan was doing conduct he knew to be bad. It was obviously bad conduct. Bryan was doing was shaving off serial numbers on firearms and using dummies to purchase arms. The court held that that sort of behavior you know is bad in and of itself and therefore that willfulness can be imputed because of that kind of behavior that you're doing. Aren't there some parallels here? No. My behavior was taking a patent application down to the patent office. That shouldn't be considered bad behavior in and of itself. And stopping payment on a check after I was told that they would litigate the matter, that's not bad behavior in and of itself. So it shouldn't result. Willfulness standard here should be that I knew of a duty and I knew what I was doing, violated that duty, or I grossly neglected a duty. As I said, willfulness was not pled in this complaint. Nowhere in the complaint is willfulness where the equivalent wording such as gross neglect of a known duty. Nowhere are the underlying facts such as intent and knowledge in that complaint where they pled in that complaint. The complaint must be dismissed for that reason. There's no evidence that the director or the committee on discipline passed on the issue of willfulness. Well, the ALJ asked for an unredacted copy of the probable cause affidavit. She produced the unredacted certificate for him to examine under seal. Now, I asked that the ALJ put that unredacted copy under seal and save it for appellate review. In our motion of October 30th, renewed motion to produce unredacted probable cause determination on the second page of page 547 to obtain meaningful review of decision in federal court, the judge should submit this document as an appellate exhibit under seal for proper reviewing authorities. And what he did was he shredded that document, which I consider an insult to this court and any appellate court standing in the position to review the entire administrative record. You can't see what the prosecutor saw. What was denied to me is being denied to you today. You cannot see what was used in the determination. The district court said we did not raise this issue in the courts below, but we did. In our appeal to the commissioner of patents filed March 30th, 1998, on page 12, we said there is no evidence that the committee was asked to consider charges, that the respondent acted willfully as to each violation. We briefed that issue in front of the commissioner, and it's in our briefs, to the district court. And the patent office did not object to it then. So we briefed the commissioner, and this court stands as a reviewing tribunal to review the entire administrative record, and can do that to see if the evidence was properly applied and the law was correctly followed. There's no evidence in the complaint or in the redacted probable cause certificate that there is no evidence that the committee on discipline or the director passed on this issue of willfulness. Now, going to the particulars, Nelson charges, in the follow-up, obtaining a copy of what got filed. I was never charged with failing to get a copy of what got filed. This charge was made up by the judge Suis-Bonte, which is unconstitutional under the Ruffalo decision. Cited in my brief. Nowhere does it mention, in the complaint, does it mention obtaining a copy of what got filed. What I was charged with was not communicating with the client and not correcting the patent. The judge found I was communicating with the client the entire time. I even offered to fix the patent that was filed at no charge. And this follow-up, obtaining what got filed was never charged. Nelson filing itself violated no rule. I was charged with filing an incomplete and incorrect patent application, and that violated no rule. Whatever didn't get in is a negligence issue, as this court has said as much in the Jasquitz case. It amounts to negligence, gross negligence. In fact, that's exactly what the ALJ found. The ALJ found it was a result of gross negligence and not willful misconduct. He says that on page 60, as well as page 63. He says it on page 60 in a couple of places. He said it was not willful, but gross negligence. On page 63, he specifically says that the Rule 56 statement that I filed is the very basis for my gross negligence ruling. I filed the Rule 56 statement to explain exactly what happened. The ALJ said that it was entirely truthful on page 63 of his decision. He said there was no fraud or deceit or misrepresentation in the Rule 56 statement, and the court should consider all circumstances. In the Palmer case, the return of materials, the judge found it was owing to office disorganization, which is specific fact-finding and underlying fact-finding, which does not support willfulness. He said it was owing to office disorganization. In the Palmer funds issue, I offered her a refund, so I sent her a check. They said they wouldn't cash it. Sacks, in his letter of August 5, Palmer's testimony, said they wouldn't cash it. So I stopped payment on the check. What duty did I violate? This is not client funds. The ALJ said it was not a client funds issue, and there's no Patent Office rule on fee disputes. After that, I assumed they would litigate the matter, so I didn't offer another refund. So I challenged the Patent Office to tell me what rule or duty did I neglect or did I violate when I didn't offer her another refund. Thank you. Thank you, Mr. Halvonik. Mr. Chen. Thank you, Your Honor. May it please the Court. Three tribunals have already looked at all the evidence in this case. There was the administrative law judge, there was the director of the PTO reviewing that ALJ decision, and then finally the district court. And when you look at all three of those decisions, it's quite clear they all carefully considered Halvonik's several arguments with regard to procedure as well as the merits, and all concluded the same thing. Mr. Halvonik violated the ethical rules, and his arguments with regard to due process are simply unpersuasive. How do you respond to his comments about willfulness? First of all, willfulness was charged in the complaint because it, as you pointed out, specifically recited that Mr. Halvonik knowingly committed these types of conduct which violate the disciplinary rules. That term knowingly is used both in count two with regards to Nelson and count three with regards to Palmer. At SA-174 and SA-177. In addition, the district court judge not only relied on that term knowingly, but also pointed out that the recitation of the facts in the complaint show that an allegation that he violated his legal duties to not only the agency but also to his clients in committing these acts. And that rises to the level of willfulness as that term has been interpreted by several circuit courts when interpreting that term in 558C of Title V. In all those licensing cases, willfulness can mean several different things. It can mean intentional misdeed. It can mean an intentional act which is prohibited irrespective of any kind of evil motive or erroneous advice that the act was based upon. It can also mean a gross neglect of a known duty. And it can also be a careless disregard of legal requirements. So that is what the ALJ looked at as a term. The Supreme Court did come out with Bryan v. United States, which the district court discussed. But that case was really a criminal matter. And the Supreme Court in that case also pointed out that willfulness can mean many different things in many different contexts. But here, for this kind of licensing case, we need to look at the 558C usage of willfulness, not how that term is necessarily used in criminal context with regards to criminal statutes. Secondly, the district court also correctly noted that never with regard to the willfulness issue did Mr. Halvonic ever allege that he was somehow prejudiced. Even if we were to assume arguendo that willfulness wasn't properly raised in this complaint or the equivalent of willfulness, nevertheless, there was no showing of any kind of prejudicial error. In his briefs, Mr. Halvonic points to 5 U.S.C. 706 2D, which states that a reviewing court can set aside an agency action for any kind of failure to observe procedures. However, Mr. Halvonic failed to cite the last sentence of section 706, which specifically says that when a reviewing court is looking at an agency action, quote-unquote, due account shall be taken of the rule of prejudicial error. And so the district court correctly noted was never alleged, let alone proven, how this alleged failure of willfulness in the complaint somehow prejudiced him. Nor could it on the facts, because in the end, the same kind of conduct is being charged, whether it's willful or not. And then the real question is whether a tribunal should decide that that conduct was serious enough that it would actually be willful, as that term is used in 558C. So in that sense, the willfulness issue is not persuasive. Going to whether the committee met that issue, if you look at the actual probable cause determination in the supplemental appendix at A209-210, it specifically states that they met, and that they met on a specific date, May 31, 1996. The first sentence of the determination says the Committee on Discipline having met on May 31, 1996. And then if you look at the following page, you'll see that all three members of the Committee of Discipline signed this document and attested the fact that, yes, they did meet and they met on May 31. But that leaves us with the question of what the word met means in this context. Now, as I understand it, the submission is that the word met can be satisfied by serial acquiescence in which none of the members were in the presence of any of the others at any single time. Is that your position? I wouldn't quite put it like that. I would say that, first of all, we have to look at this document. This is the evidence in the record, and it says that they met on May 31 and that they reviewed the evidence and then finally they determined by unanimous vote that there was a probable cause to bring these charges. Well, it certainly does say that. But if we were to understand that your use of the term or their use of the term met to encompass something other than an in-person collective aggregation of people at a single time in a single place, then we would draw a very different conclusion from the fact that they signed this document. So the key question, it seems to me, is not the fact that we have them saying we met, but rather what do they mean when they use the term met, and what enlightenment can you shed on that question? Okay. Sure. The first thing I would say is there's no evidence in the record or suggestion in the record that they did anything other than meet face-to-face in person. Now, there were allegations that they did something else, that perhaps they met by transmittal coordination. But we have no finding by the ALJ on that. The ALJ was of the view that in understanding the term shall meet, as it's used in 37 CFR 10.4b, could mean a number of things. It could mean meeting in person, it could mean by meeting over the telephone, or it could mean meeting by some form of serial coordination. But we don't have any specific finding of fact that there was a face-to-face meeting. The only thing we have is a determination by the ALJ that there was a meeting either personally, by teleconference, or by transmittal coordination. So it could be any one of those three things. Right. If the interpretation of the rule is that the rule requires a face-to-face meeting, then isn't there a problem? No, Your Honor, because first of all, the district court judge, when it reviewed the record, pointed out specifically that this document provides substantial evidence that they did in fact meet. And so therefore, this concern is not at issue. Once again, just so that we have our nomenclature down right here, when the district court so found, was the district court using the term in the narrow sense of gathered together at a single place with all three members? Or was the district court using the term in the way that the administrative law judge did, which is to say, as Judge Lynn has just adverted to, a broader concept of meet? Well, I would say that when I'm looking at this district court decision, it is not citing to the ALJ's decision when it's analyzing the question of whether a meeting took place. I'm looking at SA-17 right now. It is citing specifically the probable cause determination, as well as the declarations from the OED director. Well, here's the problem I have with the declarations. And, you know, this is the problem with declarations often, but they don't quite answer the question, it seems to me. I mean, to say I called a meeting of the Committee on Discipline doesn't tell us, suggests maybe there was a meeting, but it doesn't say that we held a meeting. It certainly doesn't say we held a meeting on May 31st in the following room, which you would have expected at least if the declarants were aware that this was an issue in the case at the point that they executed these declarations. Sure. We would have had that problem addressed. Go ahead. I have two points to make to that. First of all, the motion that was made by Mr. Halvonik's attorney here was to dismiss this case because this probable cause determination, although it was signed, it wasn't dated by the Committee on Discipline as to when they signed it. And so then they raised the concern at the hearing that perhaps this determination of probable cause wasn't signed until sometime after the complaint here was actually filed. And if so, then that would be unfair and incorrect, and the whole hearing should be closed down. That is, I believe, at Essay 83, where the ALJ explains what this motion is. And so, therefore, what those – the point of that is the whole question wasn't about whether they did meet. The ALJ said that his concern wasn't whether they actually met because he felt like they did meet. If you look at the plaintiff's appendix at 107, he says he doesn't have any doubt that they met. His real question is when did they meet – when did they actually make the determination that there was probable cause? He doesn't have any problem with that they met on that date, May 31, 1996. Now the question is when did they make the determination? Did they make it after the complaint was filed? If so, then there's a problem. Now, going to the declarations that you're speaking about, those declarations, when I read them, they are drafted to basically echo the requirements in the regulation. The requirements in the regulation, when you look at them, when I'm talking about 10.132 and 10.4, they require the OED director to call a meeting of the Committee on Discipline. And then following that, the Committee on Discipline is supposed to meet, it's supposed to review the evidence, and then it should determine by majority vote whether there was probable cause. So when you look at these documents in relation to the rules, you will see that they basically mirror each other. And so that was, I'm guessing, written that way to ensure that those declarations provide evidence to show that the PTO abided by the rules. Well, but there's no declaration. I think we're all in agreement, are we not, that you listed the call a meeting and then meet, right? And there's no declaration that says we met at the following place at the following time. As I'm just looking at the declarations. Right. So the declarations don't quite satisfy all the requirements you just set forth. The declarations written by the committee members. Right. They were written to address the concern raised in the motion, which was a motion concerning the date of when the determination was made. Was the determination made after the complaint was filed? Those committee members' declarations specifically say, we all signed this document sometime in 1996, and the complaint wasn't filed until 1997. So that alleviated the ALJ's concerns about whether or not this determination was properly made or at least timely made. Secondly, I have to also point out that as with the willfulness charge, Mr. Halvonic needed to show some kind of prejudicial error, and he did not do so. He never alleged that. And for that reason, again, the issue can't overcome this proceeding, this ALJ proceeding, this district court proceeding. Because to overturn something for procedural error, you have to show, number one, that there was indeed a procedural error. And then, two, you also have the burden of showing a prejudicial error. The courts are uniform in that, that those are both requirements here. He never alleged that at any level. And so therefore, the district court judge noted that and pointed out, for that reason alone, this question can't overturn everything that's happened to date. Now, this is a regulation, not a statute that, as I understand it, that's being applied here. Right. I was coming to that. And the PTO, does the PTO have a position with respect to what is required under the regulation as the PTO interprets it? Right. With respect to the question of meeting. Yes. I'm not aware of some formal document which interprets the term meet. Right. But I would submit to you that, yes, the PTO does get deference in how it interprets its regulations. And even if we have to get to the question of whether transmittal coordination, in fact, rises to a level of a meeting, that issue, I would submit, yes, it can. And it was appropriate to say that it could in this particular instance. But I would say I have to stress that we don't have to get there to that point. I see my red light just went on. I have several other issues I wanted to cover. Why don't you take another two minutes, and we'll give Mr. Helvonick a little more time. Okay. Second of all, when you're looking at the probable cause determination and you see those signatures, the district court was correct to point out that agency officials are presumed to act in good faith. And so, therefore, when they signed it and tested that they met and they met on a specific date, we should give some credence to that. And, again, there was nothing in the record that suggests otherwise that suggests somehow that there was a transmittal coordination. If there was any kind of transmittal coordination here, it was on the signing of that document whenever that happened, which appeared to be after the date that they met on May 31, 1996. Moving along, the Nelson rough draft application that was filed, there were many different acts and inacts that occurred by Mr. Helvonick which caused that type of misconduct to occur. First of all, his repeated failure to put in his client's edits into the draft application. As the ALJ noted, Mr. Helvonick had several bites at the apple to try to put in those changes, and he promised to make those changes, and yet he never made those changes. Secondly, he never proofread the application before it was filed. As he admitted, if he had simply looked at those papers before he filed it, he would have seen the blanks in the draft application that would have alerted him to know that, oh, all the best mode dimensions of the molding strip are not in the application. There's a problem here. I should not draft this. Third, he directed his client, Mr. Nelson, to go ahead and sign the declaration when the application process was still ongoing. They didn't have a final, finished application that they both agreed to yet. They merely had a draft which had lots of errors. Mr. Nelson testified that he was hesitant to sign that declaration for a couple reasons. Number one, it countermanded Mr. Helvonick's own written warning to Mr. Nelson that he should not sign the declaration until he's completely satisfied with the draft. Number two, it's because Mr. Nelson was quite concerned that after already a number of iterations, the changes that he wanted in his application still had not been made. Nevertheless, Mr. Helvonick promised him that he would make those changes, so go ahead and sign the declaration as if you had seen the last final version that you were satisfied with, and then he would attach that declaration with a newly generated draft application reflecting all the changes. Of course, what happened here was Mr. Helvonick never made those changes. Well, you've laid that out in your brief then. Okay, thank you. Thank you. I think we'd better move on. We're well over time. Mr. Helvonick, how much time is left on? Okay, why don't you take an extra two minutes, and so if you need the time, you can have three minutes. Thank you. Just off the top, I want to point out the correct standard for willfulness in this case is that I knew what I was doing was wrong or that I grossly neglected a duty in such manner as to amount to intentional misdeed. Gross neglect is from the capital packing case, which I think is cited, or reckless disregard of a known duty, and we get that from the McLaughlin case cited in my briefs as well as Transworld v. Thurston 469 U.S. 111 at page 125 through 130. It's reckless disregard of a statute, and the judge in his ALJ said it was careless disregard. On page 60 of the initial decision, he said careless disregard, and that's not the correct legal standard either, but as pointed out in Nelson, the judge found that it was gross negligence and not willfulness. He specifically found that. Well, there's no question I take it that there was knowledge of the applicable standard, correct? In other words, in cases like Ratzlaff, which you cited, that was a case in which the standard was one which was not necessarily known too widely, and the issue was with respect to knowledge of the applicable standard. Here, that's not really an issue, is it? The main issue for willfulness is whether I knew of a duty. Right, but there's no question that you knew of a duty, duties that you were pursuant to the rules of the office, correct? In the Nelson case? No, in your case. The Nelson charges. Right, I'm sorry. You said the Nelson case. In Palmer, I deny that there was a duty to continue to make refund requests. I deny that by stopping payment on a check, I violated a duty. Those kind of duties I don't see anywhere in their regulations or rules in Palmer. By Nelson, of course, I knew the duties. I'm a patent attorney. I read to you from the Patent Office's own submission how the Committee on Discipline is supposed to operate. We briefed that passage to the Commissioner. In our brief, I filed my appeal to the Commissioner on April 30, 1998. I challenged the Patent Council to show me what duty I violated in the Palmer matter. This is not client funds. It's a fee dispute. They have no rules on fee disputes, and this wasn't client funds, so I asked them to tell us what duty did I violate in Palmer. Number four, the Council said that the arguments on due process were addressed by the District Court. I don't think that's in the District Court's opinion. Maybe I haven't read it as carefully as I should, but I tried to read everything. I don't think it's in there. On the Nelson best mode issue, that issue was passed upon by the new attorney who took over the case. He had the same duties as I to make determinations as to preferred dimensions. The passage of preferred dimensions was in there with blanks. The new attorney deleted it as not being necessary, and the patent examiner made inquiry and made his determination that it wasn't necessary. A valid patent was issued to Nelson, passed on by the Patent Office. They passed over these issues because the examiner and the attorney had the same duties as I regarding best mode. As far as agency interpretation of its own rules, the Patent Office is considered an expert in patents and technology and such. They're not considered an expert in meetings. They don't have the right to make interpretations on such things as meetings. What the term meetings meant should be clear or obvious from how that would be done in normal agency. They shouldn't be able to interpret meetings to their advantage. Rather, they should be able to interpret patent procedures and stuff their expertise in. Very well. Thank you, Mr. Hadlott. I can thank both counsel. The case is submitted.